UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JASON DEWIGHT HINSHAW,

     Plaintiff,

     v.

CO1 P. KYLE, *et al.*,

     Defendants.

CIVIL ACTION NO. 1:24-cv-00769

(SAPORITO, J.)

ORDER

Jason Dewight Hinshaw, a prisoner proceeding *pro se*, asserts Eighth Amendment excessive force claims against two correctional officers at SCI-Huntingdon. The defendants have moved for summary judgment (Doc. 26), and Hinshaw has not responded despite an extension of the deadline to do so. Because Hinshaw did not exhaust administrative remedies, and the record shows that the defendants did not violate his Eighth Amendment rights, the Court grants summary judgment to the defendants.

I.   BACKGROUND

The Court received Hinshaw's unverified complaint on May 7, 2024. (Doc. 1). The complaint alleges that on August 22, 2022, defendants CO1 Kyle and CO1 Rivers conducted a "security check" of his cell. The officers

allegedly "snatched" family photos from the wall and "laughed . . . and made jokes" about the photos. When the search was complete, the officers allegedly "slamm[ed Hinshaw's] head into the wall," pushed him down a set of stairs while he was in restraints, and "slammed [him] onto the ground on [his] face." Hinshaw was permitted to proceed on Eighth Amendment excessive force claims against Kyle and Rivers, while a claim of "failure to train, supervise, and discipline" against five other defendants was dismissed pursuant to 28 U.S.C. § 1915A.[1] *See* (Doc. 9).

On May 26, 2025, after discovery closed, defendants moved for summary judgment. When Hinshaw failed to respond within the time allotted, the Court issued an order extending the deadline to September 5, 2025, and warning that the motion would be deemed unopposed if Hinshaw did not respond.[2] (Doc. 34). Hinshaw has not responded.

---

[1] Defendants' motion construes Hinshaw as asserting a Fourth Amendment claim premised on an allegedly improper search of his cell. *See* (Doc. 31 at 17-18). However, that was not among Hinshaw's listed claims for relief, nor does the complaint indicate that he intended to raise such a claim. *See* (Doc. 1).

[2] A prior order mailed to Hinshaw was returned undeliverable, but the Clerk found that Hinshaw had been transferred to SCI-Fayette and updated his address accordingly. *See* (Doc. 30).

## II.   LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to

the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Although the motion is unopposed, the Court must still review the record to establish "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). Because Hinshaw has not responded to defendants' motion, their properly supported statements of fact are deemed unopposed. *See* M.D. Pa. L.R. 56-1.

## III.   MATERIAL FACTS

The summary judgment record indicates as follows: On August 22, 2022, Hinshaw was subjected to a security check on his cell in the Restricted Housing Unit ("RHU") at SCI-Huntingdon. He watched from outside of his cell as defendants Kyle and Rivers searched the cell. Hinshaw testified that he had placed a picture of his sister in an area "on the wall where it wasn't supposed to be," and that Rivers "yanked" the picture from the wall, ripping the picture in the process. When the search concluded, the officers ordered Hinshaw to return to his cell, but he refused to reenter his cell without speaking to a lieutenant. (Hinshaw Dep. 13:17-14:6, 18:8-19:15, 47:3-49:4) (Doc. 32-2).

Defendants have produced surveillance video of the incident in question (Doc. 33). The video shows that Hinshaw initially walked toward his cell, escorted by the officers, until he reached the entrance. At the entrance, he began struggling against the officers, who tried to push him into the cell. The officers briefly pinned Hinshaw's body against the frame of the door. Although Hinshaw's head touched the door frame, Hinshaw moved his head to the frame on his own, after he was already pinned; the officers did not push his head or neck or "slam" his head into

- 5 -

the frame.[3]

At this point, the officers moved Hinshaw to the "strip cage," which was downstairs from his cell. Although the officers initially attempted to walk Hinshaw to the strip cage, he resisted by flailing and dragging his feet. After they descended the stairs, Hinshaw continued to resist, and the officers tackled him and pinned him to the ground. The three camera angles do not clearly depict what happened after Hinshaw was pinned, but he was pinned for approximately 45 seconds while another officer placed leg restraints on him. Hinshaw testified that during this time, he experienced a "snap out,"[4] during which he tried to harm himself by slamming his head against the floor.

---

[3] Because the video clearly contradicts Hinshaw's testimony that Kyle "grabbed [him] by the back of [the] neck and slammed [his] face in the door frame" (Hinshaw Dep. 14:1-6), that testimony is not considered for summary judgment purposes. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[4] Hinshaw testified that when he is restrained, "I get depressed and I start[ ] punching the wall or I get mad. I punch the wall. I just, I snap out. I can't tell you exactly what snap out is because it could be anything for me. I can start punching a wall, head butting stuff . . . those are all snap outs." (Hinshaw Dep. 26:5-21).

Defendants ultimately carried Hinshaw into the strip cage with assistance from two other officers.[5] In the strip cage, he was examined by a nurse and photos of his injuries were taken. He sustained a quarter-sized hematoma to the center of his forehead and abrasions on his cheek and neck. *See* (Docs. 32-3, 32-4).

The Pennsylvania Department of Corrections ("DOC") provides a three-part procedure for inmate grievances: initial review by a Grievance Officer, appeal to the Facility Manager, and final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). As relevant here, the final appeal to SOIGA must be accompanied by "all required documentation relevant to the appeal," including copies of the initial grievance, the appeal, and the responses. *See* DC-ADM 804 (Doc. 32-5 at 24-58), § 2.B.1.j.

On August 25, 2022, three days after the incident in question, Hinshaw filed Grievance No. 995129, reciting similar allegations to those he made in this complaint. On January 30, 2023, following an

---

[5] The video does not clearly depict the strip cage, but Hinshaw does not allege that he was subjected to excessive force in the strip cage.

investigation[6], the Grievance Officer denied the grievance. *See* (Doc. 32-5 at 14-22). The Facility Manager denied Hinshaw's appeal. Hinshaw attempted to appeal to SOIGA, but his appeal was dismissed for his failure to attach copies of the initial grievance, initial response, and appeal to the Facility Manager. *See* (Doc. 32-6 at 11). The record does not indicate that Hinshaw tried to resubmit his appeal.

## IV. DISCUSSION

Defendants are entitled to summary judgment because Hinshaw did not properly exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S.

---

[6] When a grievance alleges abuse of an inmate, the applicable rules permit an indefinite extension of the time to respond while the allegations are investigated. *See* DC-ADM 804, § 1.D; *Tomlin v. Smolke*, No. 1:24-CV-628, 2025 WL 3515257, at *4 (M.D. Pa. Dec. 8, 2025).

81, 88 (2006)). Therefore, exhaustion within the DOC requires appeal to SOIGA, the third and final step of the process. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).

Here, the undisputed evidence shows that Hinshaw did not follow the rules of the grievance process in attempting to appeal to SOIGA, and SOIGA dismissed the appeal without considering it on the merits. An inmate who fails to provide the required documentation for a final appeal, and has the appeal dismissed on that basis, has not exhausted available remedies and cannot sue in federal court. *See, e.g., Sanders v. Sec'y Pennsylvania Dep't of Corr.*, 602 F. App'x 54, 57 (3d Cir. 2015); *Hall v. Wahl*, No. 3:23-CV-0494, 2024 WL 1077321, at *3 (M.D. Pa. Mar. 12, 2024); *Buehl v. Fisher*, No. 3:10-CV-2288, 2014 WL 1334219, at *11 (M.D. Pa. Apr. 2, 2014).

Even if the Court could consider Hinshaw's claim, the record forecloses any reasonable inference of excessive force. When an inmate disobeys a verbal order and attempts to physically resist a cell placement, prison officers are permitted to use force as necessary to subdue the inmate. *See, e.g., Washington v. Ondrejka*, 822 F. App'x 104, 106 (3d Cir. 2020); *Tindell v. Beard*, 351 F. App'x 591, 595-56 (3d Cir. 2009). It is

undisputed that Hinshaw resisted defendants' efforts to return him to his cell and continued to resist when they attempted to place him in the strip cage. No reasonable jury viewing the video could conclude that it was excessive to pin Hinshaw to the ground when he had physically resisted the officers for almost 30 seconds, or that the officers did so "maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quotation omitted). Contrary to Hinshaw's allegations, they did not "slam" his head into a wall, and the medical evidence shows that he sustained only superficial injuries from this incident.

## V.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.     Defendants' motion for summary judgment (Doc. 26) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of defendants and against plaintiff.

2.     Defendants' motion to dismiss for failure to prosecute (Doc. 36) is **DENIED** as moot.

3.     The Clerk is directed to mark this case as **CLOSED**.

Dated: March 10, 2026          *s/Joseph F. Saporito, Jr.*
                               JOSEPH F. SAPORITO, JR.
                               United States District Judge